IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ART ASK AGENCY,<br><br>    Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO,<br><br>    Defendants. | Case No. 23-cv-15373<br><br>Judge |

**COMPLAINT**

Plaintiff, ART ASK AGENCY, by undersigned counsel, hereby complains of the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants"), and for its Complaint hereby alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Copyright Act, 17 U.S.C. § 101 et seq.; 28 U.S.C. § 1338(a)–(b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

1

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets consumers in the United States, including Illinois, through at least the fully interactive commercial Internet stores operating under the Defendant Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing infringing versions of Plaintiff's ANNE STOKES Copyrights. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold products bearing infringing versions of Plaintiff's copyrighted artwork to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## INTRODUCTION

3. This action has been filed by Plaintiff to combat online infringers who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale products in connection with Plaintiff's Anne Stokes copyrighted artwork.

4. Defendants created numerous Internet Stores and designed them to appear to be selling genuine Plaintiff's products, while selling inferior imitations of Plaintiff's products. Defendant Internet Stores share unique identifiers, such as design elements and similarities of the infringing products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or

series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal infringing operation. Plaintiff is forced to file this action to combat Defendants' infringing of Plaintiff's copyrighted artwork, as well as to protect unknowing consumers from purchasing unauthorized products bearing Plaintiff's copyrighted artwork over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable copyrighted artwork as a result of Defendants' actions and seeks injunctive and monetary relief.

5. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused was undertaken in Illinois and in this Judicial District. In addition, each Defendant has offered to sell and ship infringing products into this Judicial District.

## THE PLAINTIFF

6. Plaintiff ART ASK AGENCY is a company organized under the laws of Spain with its principal place of business located at Port Ginesta 603, 08860 Les Botigues de Sitges, Barcelona, Spain.

7. Plaintiff ART ASK AGENCY is the exclusive licensee of the Anne Stokes copyright registrations for the fantasy art of British artist Anne Stokes which have been used and licensed for use on many products worldwide. The striking designs and life-like portrayals of fantasy subjects by Anne Stokes are widely acclaimed. ART ASK AGENCY is the official source of Anne Stokes products in the United States, which include the following:

http://artaskagency.com/our-licenses/anne-stokes/



8. The Anne Stokes copyrighted artwork is and has been the subject of substantial and continuous marketing and promotion by Plaintiff. Plaintiff has and continues to market and promote the copyrighted artwork in the industry and to consumers. Plaintiff's promotional efforts include — by way of example, but not limitation — substantial print media, a website, social media sites, and point of sale materials.

9. The Anne Stokes copyrighted artwork is distinctive and identifies the merchandise bearing that copyrighted artwork as goods from Plaintiff.

10. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the copyrighted artwork. As a result, products bearing its copyrighted artwork are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

## THE DEFENDANTS

11. Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States, including Illinois and within this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendants' Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell infringing products to consumers within the United States, including Illinois and this Judicial District.

## THE DEFENDANTS' UNLAWFUL CONDUCT

12. The success of Plaintiff's brand has resulted in its infringing. Plaintiff has identified numerous online marketplace accounts linked to fully interactive websites and marketplace listings on platforms such as iOffer, Alipay and Alibaba, including the Defendants' Internet Stores, which were offering for sale, selling, and importing infringing products to consumers in this Judicial District and throughout the United States. Defendants have persisted in creating the Defendants' Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in fiscal year 2021 was over $3.3 billion. According to a 2021 study on the impact of the sale of fraudulent goods entitled "The Counterfeit Silk Road - Impact of Counterfeit Consumer Products Smuggled into the United States" (the 2021 study), Internet websites like the

Defendant Internet Stores are also estimated to contribute to over 653,000 lost jobs for legitimate businesses and broader economic damages such as lost wages in an amount over $36 billion and a loss of federal and state tax revenue of over $13.5 billion every year.

13. Upon information and belief, Defendants facilitate sales by designing the Defendants' Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine products. Many of the Defendants' Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards and Alipay and Alibaba. Defendants' Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such infringing sites from an authorized website. Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard® and Alipay and Alibaba logos.

14. Plaintiff has not licensed nor authorized Defendants to use its copyrighted artwork, and none of the Defendants are authorized retailers of its genuine products.

15. Upon information and belief, Defendants deceive unknowing consumers by using the Plaintiff's copyrighted artwork without authorization on Defendants' products. Defendants will also use artist Anne Stokes's name within the content, text, and/or meta tags of their websites to attract various search engines looking for websites relevant to consumer searches for Plaintiff's products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendants' Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for Plaintiff's genuine products. Further, Defendants utilize similar illegitimate SEO

tactics to propel new online marketplace account listings to the top of search results after others are shut down.

16. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, many of Defendants' names and physical addresses used to register the Defendants' Online Marketplace Accounts are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendants use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. Such patterns are some of the tactics used by the Defendants to conceal their identities, the scope and interworking of their infringing operations, and avoiding being shut down.

17. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendants' Internet Stores. For example, some of the Defendants' websites have identical layouts and product images, even though different aliases were used to register their respective online marketplace accounts. In addition, the infringing products for sale in the Defendants' Internet Stores bear similarities and indicia of being related to one another, suggesting that the infringing products were manufactured by a common source and that Defendants are interrelated. The Defendants' Internet Stores also include other notable common features, including use of the same online marketplace registration patterns, unique shopping cart platforms, similar payment and check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items

and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

18. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online infringers use a variety of other common tactics to evade enforcement efforts. For example, when infringers like Defendants receive notice of a lawsuit they will often register new online marketplace accounts under new aliases and move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Infringers will also ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. The 2021 study indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit and/or infringing goods shipped through the mail and express carriers.

19. Further, infringers such as Defendants typically operate multiple credit card merchant and Alipay and Alibaba accounts behind layers of payment gateways so that they can continue to operate in spite of Plaintiff's enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their Alipay and Alibaba accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of Alipay and Alibaba transaction logs from prior similar cases indicate that offshore infringers regularly move funds from U.S.-based Alipay and Alibaba accounts to foreign bank accounts outside the jurisdiction of this Court.

20. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use Plaintiff's copyrighted artwork in connection with the advertisement, distribution, offering for sale, and sale of infringing products into the United

States and Illinois over the Internet. Each Defendants' Internet Stores offer shipping to the United States, including Illinois and, on information and belief, each Defendant has offered to sell infringing products into the United States, including Illinois.

21. Defendants' use of Plaintiff's copyrighted artwork in connection with the advertising, distribution, offering for sale, and sale of infringing products, including the sale of infringing products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

## COUNT I
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 501(a))

22. Plaintiff repeats and incorporates by reference herein its allegations contained in paragraphs 1-21 of this Complaint.

23. Plaintiff's products have significant value and have been produced and created at considerable expense.

24. Plaintiff, at all relevant times, has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, including but not limited to the copyrighted products, including derivative works. Plaintiff's products are the subject of valid Certificates of Copyright Registration issued by the Register of Copyrights. (Group Exhibit 1). The copyrighted products include a copyright notice advising the viewer that Plaintiff's products are protected by the Copyright Laws.

25. Upon information and belief, Defendants had access to the works through Plaintiff's normal business activities. After accessing Plaintiff's work, Defendants wrongfully created copies of the copyrighted products without Plaintiff's consent and engaged in acts of widespread infringement.

26. Plaintiff is informed and upon belief thereon alleges that Defendants further infringed Plaintiff's copyrights by making or causing to be made derivative works from Plaintiff's products by producing and distributing reproductions without Plaintiff's permission.

27. The copyrighted products include a copyright notice advising the general public that Plaintiff's products are protected by Copyright Laws.

28. Defendants, without the permission or consent of Plaintiff, have sold, and continue to sell, online infringing derivative works of Plaintiff's copyrighted products. Defendants have violated Plaintiff's exclusive rights of reproduction and distribution. Defendants' actions constitute infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. §101 et seq.).

29. As a direct result of the acts of copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the copyrighted products. Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to their infringement of Plaintiff's products.

30. The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts and have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

31. As a result of Defendants infringement of Plaintiff's exclusive rights under copyrights, Plaintiff is entitled to relief pursuant to 17 U.S.C. §504 and to its attorneys' fees and costs pursuant to 17 U.S.C. §505.

32. The conduct of Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff irreparable injury that cannot be compensated fully or monetized. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§502 and 503,

Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's copyright and ordering Defendants to destroy all unauthorized copies. Defendants' copies, plates, and other embodiment of Plaintiff's products from which copies can be reproduced should be impounded and forfeited to Plaintiff as instruments of infringement, and all infringing copies created by Defendants should be impounded and forfeited to Plaintiff, under 17 U.S.C. §503.

## COUNT II
### VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510/1, et seq.)

33. Plaintiff repeats and incorporate by reference herein its allegations contained in paragraphs 1-32 of this Complaint.

34. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their infringing products as those of Plaintiff, causing likelihood of confusion and/or misunderstanding as to the source of their goods, causing likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates likelihood of confusion or misunderstanding among the public.

35. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1, et seq.

36. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their officers, agents, servants, employees, attorneys and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the Anne Stokes copyrighted products/artwork or any reproductions, copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product or is not authorized by Plaintiff to be sold in connection with the Anne Stokes Copyrights;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Anne Stokes Copyrights;

   c. committing any acts calculated to cause consumers to believe that Defendants' infringing products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

   d. further infringing the Anne Stokes Copyrights and damaging Plaintiff's goodwill;

   e. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered including the Anne Stokes copyrighted artwork, or any reproductions, copies, or colorable imitations thereof, or which are derived from the copyrighted artwork; and

    f.   using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts or any other online marketplace account that is being used to sell or is the means by which Defendants could continue to sell infringing products.

2) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as iOffer, Alipay and Alibaba, social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defendants' Online Marketplace Accounts, shall:

    a.   disable and cease providing services for any accounts through which Defendants engage in the sale of products using the Anne Stokes copyrighted artwork or which are derived from the copyrighted artwork, including any accounts associated with the Defendants listed in Schedule A; and

    b.   disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit products using Plaintiff's copyrighted artwork or which are derived from the copyrighted artwork.

3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged as provided by 17 U.S.C. § 504(b).

4) In the alternative, that Plaintiff be awarded statutory damages pursuant to 17 U.S.C. § 504(c) of not less than $200 and not more than $150,000 for each and every use of the ANNE STOKES Copyrights.

5) That Plaintiff is awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

DATED: October 27, 2023                Respectfully submitted,


                                        By:     */s/ Michael A. Hierl*
                                               Michael A. Hierl (Bar No. 3128021)
                                               William B. Kalbac (Bar No. 6301771)
                                               Robert P. McMurray (Bar No. 6324332)
                                               Hughes Socol Piers Resnick & Dym, Ltd.
                                               Three First National Plaza
                                               70 W. Madison Street, Suite 4000
                                               Chicago, Illinois 60602
                                               (312) 580-0100 Telephone
                                               (312) 580-1994 Facsimile
                                               mhierl@hsplegal.com

                                               Attorneys for Plaintiff
                                               Art Ask Agency

## CERTIFICATE OF SERVICE

    The undersigned attorney hereby certifies that a true and correct copy of the foregoing Complaint was filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system on October 27, 2023.

                                                                           s/Michael A. Hierl